**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **BRICIA ROSLYN PINI,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:17-cv-739** |
| **v.** | ) | |
| | ) | |
| **STAYBRIGHT ELECTRIC OF** | ) | |
| **COLORADO,** | ) | |
| **Defendant.** | | |

**MEMORANDUM OPINION**

At issue in this Title VII[1] employment discrimination case is defendant's motion for summary judgment. Specifically, defendant argues that it is entitled to judgment as a matter of law on *pro se* plaintiff's hostile work environment, gender discrimination, retaliation, and negligent retention claims and that plaintiff is not entitled to punitive damages pursuant to 42 U.S.C. § 1981a. Plaintiff opposes defendant's motion, arguing that she has adduced record evidence establishing the existence of a genuine dispute of material fact (i) as to whether plaintiff was subjected to a hostile work environment and (ii) as to whether plaintiff was terminated because she is a woman or in retaliation for her complaints about harassment. These issues have been fully briefed and argued and are now ripe for disposition.

---

[1] 42 U.S.C. § 2000e *et seq.*

1

**I.**[2]

Plaintiff, Bricia Pini, is a resident of West Virginia and former employee of defendant. Specifically, plaintiff began working for defendant as a Warehouse Attendant at defendant's Chantilly location on July 7, 2016.  In her role as Warehouse Attendant, plaintiff was responsible for, among other things, overseeing and managing inventory and company service vehicles. Plaintiff's regular work hours in this role were from 6:00 a.m. until 3:00 p.m.

On August 1, 2016, approximately three weeks after plaintiff began working for defendant, plaintiff sent her supervisor, Ronald Charpentier ("Charpentier"), an email complaining about the use of profanity in the workplace.  Although plaintiff's email did not name the employees alleged to have used profanity, plaintiff advised Charpentier verbally that Elijah Coleman ("Coleman"), Karl Ferguson ("Ferguson"), and Jason Larrick ("Larrick") used profanity while having a conversation in the workplace concerning stripper parties, sex, and alcohol.  Plaintiff testified that she overheard the conversation between Coleman, Ferguson, and Larrick but that plaintiff was not a party to the conversation and the conversation was not directed at her.  Later that same day, Charpentier responded to plaintiff's email and told her that he "addressed [the issue] with a few tech's [sic]" and that the matter was "taken care of."  Aug. 1, 2016 Email from Charpentier to Pini.

---

[2] The facts recited here are derived from defendant's list of undisputed facts, most of which were not specifically or properly disputed.  Defendant, consistent with Local Rule 56(B) and the Rule 16(B) Scheduling Order, submitted in connection with its motion for summary judgment a separately captioned section listing in numbered-paragraph form all material facts as to which the defendant contends no genuine dispute exists.  *See Pini v. Staybright Electric of Colorado*, No. 1:17-cv-739 (E.D. Va. Feb. 7, 2018) (Order).  Plaintiff, on the other hand, failed to comply with these rules.  Plaintiff did not specifically cite to any record evidence to support her factual disputes and in the few instances that plaintiff did cite to record evidence, the citations were completely unrelated to the fact at issue. Plaintiff also disputed many of defendant's facts by arguing that the facts were drawn from inadmissible evidence, but defendant refutes this by citing to depositions, sworn interrogatory responses, sworn affidavits, and authenticated documents, in support of those facts.  Finally, plaintiff attempts to include additional material facts for consideration, but also fails to cite to any record evidence in support of these additional facts.  Because plaintiff did not comply with either the Scheduling Order or the Local Rules, the record has been scoured for facts that arguably could be viewed as conflicting with the facts recited here.

On August 15, 2016, plaintiff sent Charpentier another email, stating that Michael Allanson ("Allanson"), another of defendant's employees, had been "hostile" to plaintiff and complaining about three such instances of hostility.  Specifically, with respect to the first incident, plaintiff explained in her deposition that Allanson asked Mike Machado ("Machado"), a Hispanic individual, "Habla Ingles?," and chastised Machado.  Pl. Dep. 67:20-68:7.  With respect to the second incident, plaintiff explained that Allanson stood close to plaintiff in her office.  Plaintiff also described how Allanson used profanity in the warehouse.  With respect to the third incident, plaintiff testified that Allanson called plaintiff "Sweetheart" after plaintiff asked Allanson not to refer to her by that term.  *Id.* at 86:17-87:5.

That same day, on August 15, 2016, plaintiff, Charpentier, and Roy Bayhi ("Bayhi"), Charpentier's supervisor, met with Allanson to discuss plaintiff's complaints.  During the meeting, Bayhi told Allanson that it was unacceptable for Allanson to refer to other employees as "Sweetheart."  Allanson resigned during the meeting.

A little more than one month later, on September 28, 2016, plaintiff sent Charpentier an email describing an incident that occurred in the warehouse between plaintiff and Ferguson. Specifically, plaintiff reported that Ferguson gave plaintiff a lamp, and after plaintiff asked Ferguson questions about the lamp, Ferguson aggressively grabbed the lamp from plaintiff's hand and said "Fuck it."  Sept. 28, 2016 Email from Plaintiff to Charpentier.  Charpentier subsequently forwarded the email to Bayhi stating "This has to be dealt with immediately." Sept. 28, 2016 Email from Charpentier to Bayhi.

The same day, on September 28, 2016, plaintiff sent Charpentier an email informing him that plaintiff would take a sick day the next day, September 29, 2016.  Charpentier approved plaintiff's absence.

On September 29, 2016, Louis Lolli ("Lolli"), defendant's Director of Human Resources, sent Ferguson an email telling Ferguson that profanity could not be tolerated in a professional environment and explaining that profanity could "be considered verbal harassment" leading to "a hostile work environment." Sept. 29, 2016 Email from Lolli to Ferguson.  Lolli instructed Ferguson to "refrain from allowing this to happen again." *Id.*

The next day, on September 30, 2016, plaintiff, Lolli, Bayhi, and Raymond Bross ("Bross"), defendant's Vice President, attended a conference call regarding plaintiff's accusations.  Following the conference call, plaintiff sent Lolli a summary of the September 28 incident.  Plaintiff recounted that after handing plaintiff a lamp, "[Ferguson] grabbed the other end [of the lamp,] snatched [the lamp] from plaintiff's hand and said fuck it."  Sept. 30, 2016 Email from Plaintiff to Lolli.  Plaintiff further explained that in her view (i) an assault occurred when "[Ferguson] took a step towards [plaintiff and] grabbed the lamp out of [plaintiff's] hand in an aggressive manner" and (ii) harassment occurred when "[Ferguson] said 'fuck it' in the professional workplace." *Id.*

On September 30, 2016, Ferguson also emailed Lolli his account of the September 28 incident.  In this email, Ferguson stated that he asked plaintiff about a special lamp, gave plaintiff the lamp, and when plaintiff examined the lamp for additional information, Ferguson said "shit then forget it" under his breath and returned to his truck.  Lolli responded to Ferguson and explained that defendant was investigating the situation but that any use of profanity on Ferguson's part would not be tolerated.  Thereafter, defendant continued to monitor Ferguson, and on October 4, 2016, issued a verbal warning to Ferguson for his use of profanity in the warehouse.

Also on September 30, 2016, plaintiff reported that she fell off a ladder in defendant's warehouse.  Plaintiff saw a physician that day, who cleared her to return to work on October 4, 2016.  On October 4, 2016 at 4:00 a.m., plaintiff sent Charpentier an email saying that she would be late to work because of the pain from her accident.  Plaintiff did not arrive to work until 10:30 a.m., more than four hours after her scheduled start time.  Plaintiff was issued a verbal warning for reporting late to work.  Later that same day, plaintiff emailed Charpentier asking about her personal belongings, which she had left in a company vehicle that was now being used by a new employee.

The next day, on October 5, 2016, plaintiff emailed Charpentier at 4:33 a.m., telling him that her glasses were in the company vehicle now being used by a new employee and that plaintiff could not drive in the dark without her glasses.  Plaintiff did not arrive at work until 8:40 a.m., once it was light enough out for her to drive.  Charpentier issued a written warning for plaintiff's tardiness.

Later that day, plaintiff threatened to call the police if defendant did not return the personal belongings plaintiff left in the company vehicle.  Charpentier told plaintiff that he would retrieve plaintiff's belongings for her and instructed plaintiff to wait outside the warehouse while he retrieved plaintiff's belongings.  Plaintiff subsequently sent Charpentier and Bayhi an email, saying that she did not know where Charpentier was and that she was leaving for the day.  The parties dispute the precise time at which plaintiff sent this email and departed work on October 5.  Defendant cites to an email chain purporting to show that plaintiff left work at 2:03 p.m., approximately one hour before the end of her scheduled shift at 3 p.m.  *See* Def. Mot. S.J. Ex. M.  Plaintiff, by contrast, argues that defendant altered the time stamp on the email chain

and cites to an email chain purporting to show that plaintiff left work at the end of her shift at 3 p.m. *See* Pl. Opp. Ex. 3.

The next day, on October 6, 2016, plaintiff was terminated.  Plaintiff's termination form cited plaintiff's "excessive absences/tardiness" as the reason for her termination and described the final incident prompting plaintiff's termination.  Pini Termination Form.  The form explained that plaintiff left before 3 p.m. when plaintiff's shift was scheduled to end.

The record reflects that around the same time, Charpentier administered discipline to other employees for their tardiness and absenteeism.  Plaintiff relies on one of these other employees as a comparator.  Specifically, on August 29, 2016, Charpentier gave Chris Henson ("Henson"), another employee of defendant's, a verbal warning for not attending a mandatory meeting on a Monday morning and for missing work on Saturday.  The next day, on August 30, 2016, Charpentier gave Henson a written warning for not completing a job correctly.  The day after that, on August 31, 2016, Charpentier gave Henson a written warning for Henson's failure to report to work until 8:30 a.m. despite being instructed to arrive at work between 5 a.m. and 6 a.m.  And finally, on September 1, 2016, Charpentier suspended Henson when Henson once again reported to work late.  The record reflects that although suspended, Henson was not terminated at that time.

Plaintiff, proceeding *pro se*, filed the complaint in this action on June 29, 2017, asserting several claims: (i) hostile work environment, (ii) disability discrimination, (iii) gender discrimination, (iv) retaliation, (v) negligent and wrongful hiring, retention and supervision, (vi) negligent failure to prevent sexual harassment, and (vii) intentional infliction of emotional distress.  On December 20, 2017, defendant filed a motion to dismiss, arguing (i) that plaintiff's hostile work environment, discrimination, and retaliation claims were time-barred, (ii) that

plaintiff failed to exhaust administrative remedies for her disability discrimination claim, and (iii) that plaintiff failed to state claims for negligent hiring and retention. An Order issued on January 22, 2018, granting in part and denying in part defendant's motion to dismiss. *See Pini v. Staybright Electric of Colorado*, No. 1:17-cv-739 (E.D. Va. Jan. 22, 2018) (Order). Specifically, defendant's motion was granted with respect to plaintiff's disability discrimination, negligent supervision, negligent hiring, negligent failure to prevent sexual harassment, and intentional infliction of emotional distress claims. Defendant's motion was denied in all other respects. Plaintiff did not thereafter file an additional amended complaint, so the parties proceeded to conduct discovery with respect to plaintiff's hostile work environment, gender discrimination, retaliation, and negligent retention claims.

On May 1, 2018, defendant filed the motion for summary judgment at issue here. Defendant argues it is entitled to judgment as a matter of law on plaintiff's hostile work environment claim because the unwelcome conduct plaintiff endured (i) was not based on plaintiff's membership in a protected class, (ii) was not sufficiently severe or pervasive to alter the conditions of plaintiff's employment, and (iii) could not be imputed to defendant. Defendant also contends that it is entitled to judgment (i) on plaintiff's gender discrimination claim because plaintiff was not performing her job satisfactorily and (ii) on plaintiff's retaliation claim because plaintiff did not engage in protected activity and has not established that defendant's legitimate non-retaliatory reason for terminating plaintiff is pretext for retaliation. Plaintiff opposes defendant's motion, arguing (i) that the conduct plaintiff endured was severe, (ii) that defendant did nothing to stop the harassing conduct, and (iii) that plaintiff was terminated for her tardiness despite the fact that other male employees who were also late were not similarly disciplined.

**II.**

The standard of review on motions for summary judgment is too well-settled to warrant extensive discussion.  Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate only where there is "no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute exists if "there is sufficient evidence on which a reasonable jury could return a verdict in favor of the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In evaluating this question, courts must "view the evidence in the light most favorable to . . . the nonmovant." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).  The nonmovant, however, cannot rely on "mere allegations;" rather, the nonmovant "must set forth specific facts that go beyond the mere existence of a scintilla of evidence."  *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (internal quotations and citations omitted).

**III.**

Defendant is entitled to judgment as a matter of law on plaintiff's hostile work environment claim because plaintiff has failed to adduce evidence that plaintiff's co-workers' harassing conduct (i) was directed at her protected characteristics, (ii) was sufficiently severe or pervasive to alter the conditions of her employment, and (iii) was imputable to the employer.

Title VII provides a cause of action to an employee when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  To establish a hostile work environment claim, a plaintiff must allege that the harassment "was (1) unwelcome, (2) based on [her protected characteristic, such as race, national origin, or religion], (3) sufficiently severe or

pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the defendant]." *EEOC v. Cent. Wholesalers, Inc.,* 573 F.3d 167, 175 (4th Cir. 2009). Fourth Circuit precedent instructs courts evaluating whether a plaintiff has established a hostile work environment claim to consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011). Importantly, the Fourth Circuit has made clear that "Title VII does not create a general civility code in the workplace"[3] and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (internal citations and quotation marks omitted).

These principles, applied here, point definitively to the conclusion that there is no genuine dispute of material fact as to whether plaintiff experienced a hostile work environment. Plaintiff's hostile work environment claim relies on four incidents that plaintiff reported to her superiors: (i) Ferguson, Coleman, and Larrick's use of profanity in the warehouse, (ii) Allanson's comment to Machado, (iii) Allanson's "Sweetheart" comment to plaintiff, and (iv) Ferguson's use of profanity and attempt to grab a lamp away from plaintiff. To begin with, the undisputed factual record reveals that two of these incidents were neither directed at plaintiff nor based on plaintiff's protected characteristics. With respect to the incident with Machado, the record discloses that Allanson said "Habla Ingles?" to Machado, targeting Machado's Hispanic origin.

---

[3] *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 335 (4th Cir. 2010) (internal quotation marks omitted).

Although Allanson's behavior was plainly based on a protected characteristic, it was not a protected characteristic that plaintiff shares.  Similarly, there is no evidence in the record suggesting that the use of profanity in the warehouse was targeted at plaintiff's protected characteristics.  There is no evidence that the warehouse employees used any racial slurs or sexist phrases; instead, the undisputed record reflects that the employees used generally profane and vulgar language in a conversation to which plaintiff was not a party.

At the same time, a reasonable jury could find that two of the incidents in the record were based on plaintiff's protected characteristics, namely Allanson's "Sweetheart" comment and Ferguson's attempt to grab the lamp from plaintiff while plaintiff was alone in the office.  But this does not end the inquiry because even assuming these incidents were (i) based on plaintiff's protected characteristics and (ii) sufficiently severe or pervasive to support a hostile work environment claim,[4]  plaintiff has not adduced evidence to impute liability for these incidents to

---

[4] It is far from clear that these incidents are severe or pervasive enough to support the existence of a hostile work environment.  On the one hand, courts in this circuit have found that conduct is not pervasive enough where it involves isolated or scattered incidents, *see Hopkins v. Balt. Gas & Elec. Co.*, 77 F.3d 745, 753 (4th Cir. 1996) (holding that a supervisor's alleged harassment of a former employee was not sufficiently severe or pervasive to create an objectively hostile work environment because "[a] handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage" (quoting *Baskerville v. Culligan Internat'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995)), and have routinely dismissed hostile work environment claims based on comments far more egregious than "Sweetheart."  *See, e.g.*, *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (holding that numerous comments such as "we've made every female in the office cry like a baby" and "fetch your husband's slippers like a good wife," and references to employees as "slaves" and "little people" were not sufficiently severe to state a hostile work environment claim); *Tims v. Carolinas Healthcare Sys.*, 983 F. Supp. 2d 675, 680-81 (W.D.N.C. 2013) (granting motion to dismiss where plaintiff alleged supervisor referred to her as "you people" and "y'all blacks" because "isolated comments do not rise to the level of severity necessary to alter the terms and conditions of employment"); *Roberts v. Fairfax Cnty. Pub. Sch.*, 858 F. Supp. 2d 605, 609-11 (E.D. Va. 2012) (holding that supervisor's use of highly offensive racial slur was not sufficiently severe or pervasive to support hostile work environment claim); *Murphy v. Danzig*, 64 F. Supp. 2d 519, 522 (E.D.N.C. 1999) (granting motion to dismiss hostile work environment claim where supervisor allegedly told the plaintiff "you're black" and "you people are used to being targeted" because that comment was a "mere offensive utterance that occurred once and did not unreasonably interfere with [the plaintiff's] ability to work").

On the other hand, the Fourth Circuit has recognized that where isolated conduct can properly be deemed "extremely serious," that conduct can establish a hostile work environment claim.  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 268 (4th Cir. 2015) (en banc) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  In this regard, the Fourth Circuit has recognized specifically that "an isolated incident that is physically threatening . . . will be closer—even if not equal—to the type of conduct actionable on its own because it is 'extremely serious.'"  *Id.* (quoting *Faragher*, 524 U.S. at 788).

defendant.  Fourth Circuit precedent makes clear that an employer is liable for the harassing conduct of an employee "only where [the employer] had actual or constructive knowledge of the existence of a sexually hostile work environment and took no prompt and adequate remedial action.'" *Spicer v. Com. of Va., Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995) (quoting *Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir. 1987)) (internal quotation marks omitted). The undisputed factual record here reveals that defendant had knowledge of the harassing conduct as plaintiff sent her complaints to Charpentier and other management officials via email. Notably, the record also reveals that defendant took prompt and adequate remedial action following each of plaintiff's complaints.  With respect to the complaints about profanity in the warehouse, Charpentier spoke to the individuals involved and instructed them not to use profanity.  Similarly, Charpentier reprimanded Allanson for calling plaintiff "Sweetheart" and as a result, caused Allanson to resign.  Finally, defendant launched an investigation led by Lolli, the Human Resources Director, into plaintiff's complaint with respect to the incident with the lamp. Defendant took statements from each of the individuals involved and issued a warning to Ferguson for his use of profanity.  Accordingly, there is no basis on this record from which to impute liability for plaintiff's environment to defendant.

In sum, the undisputed factual record discloses that there is no genuine dispute of material fact with respect to whether plaintiff was subject to a hostile work environment.  She was not.  This is so because the incidents (i) were not directed at plaintiff's protected characteristics, (ii) were isolated, and (iii) were not imputable to defendant inasmuch as defendant took prompt action to investigate each complaint and to reprimand the individuals involved.

11

## IV.

Plaintiff's claim that she was discriminated against on the basis of her gender when she was terminated survives summary judgment.  Plaintiff contends that the fact that Henson, a male employee of defendant also supervised by Charpentier, was written up and suspended for similar infractions as those committed by plaintiff suggests that defendant discriminated against plaintiff on the basis of her gender when it terminated plaintiff.

To establish a prima facie case of discrimination in this disparate discipline context, the plaintiff must show:

> (1) that [s]he is a member of [a protected class], (2) that the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees.

*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir.1985)).[5]  Where a plaintiff makes out a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 977, 802 (1973).  If the defendant successfully does so, the burden shifts back to the plaintiff to show that the legitimate non-discriminatory reason is mere pretext.

Defendant does not, of course, dispute that plaintiff, a woman, is a member of a protected class.  Nor does defendant dispute that plaintiff was disciplined more severely than Henson; plaintiff was terminated after receiving one verbal and one written warning while Henson was written up several times and then suspended before he was ultimately terminated.  In recognition of this fact, defendant argues that plaintiff has not established that the prohibited conduct in

---

[5] Defendant argues that plaintiff's gender discrimination claim fails because she has not showed that she was meeting the employer's expectations.  But meeting an employer's expectations is a requirement of a claim of discriminatory termination.  Discriminatory discipline is the more appropriate claim where, as here, the plaintiff argues that defendant disciplined her more severely than individuals who were not a member of her protected class and who committed the same infraction as her.

which plaintiff engaged was comparable to the male comparator that plaintiff identifies. But there appears to be a genuine dispute of material fact as to whether plaintiff's conduct was comparable in serious to that of Henson. Henson's employee performance counseling form reveals that like plaintiff, Henson, arrived late to work on several days, and in some instances, did not attend work at all. Moreover, contrary to defendant's assertions, plaintiff and Henson's infractions occurred within a similar span of time. Plaintiff was late two days in a row and then allegedly left early on a third day, and Henson was also late several days in a row.

In sum, the undisputed factual record discloses that defendant gave a male employee a written warning and suspension and imposed a more severe sanction—termination—on a female employee. Because there is a genuine factual dispute as to whether the male employee engaged in misconduct "comparable in seriousness" to plaintiff's misconduct, plaintiff has established a prima facie case of disparate discipline.

Given that plaintiff has satisfied her prima facie case, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the action. Where, as here, a comparator receives less severe punishment than a plaintiff, Fourth Circuit precedent provides that "[t]he defendant may not discharge its burden [of articulating a legitimate nondiscriminatory reason] by merely restating the offense for which the plaintiff was disciplined;" rather, the defendant must produce "evidence available only to the defendant, such as insight into the discretionary factors underlying defendant's decision to discipline two individuals differently." *Moore*, 754 F.2d at 1106 (citations omitted). Defendant asserts two allegedly non-discriminatory reasons for the disparate treatment of plaintiff and Henson: (i) plaintiff was the only individual employed at the Chantilly location so it was more important for her to arrive at work on time, and (ii) plaintiff's violations occurred over the course of three days whereas Henson's violations occurred over a longer period of time.

13

But this does not end the inquiry because there remains a genuine dispute of material fact as to whether these legitimate non-discriminatory reasons for distinguishing between plaintiff and her comparator are pretextual. To begin with, defendant fails to cite to any record evidence supporting the distinctions that it relies upon; indeed, it is unclear what evidence in the record shows that plaintiff was the only employee at her location while Henson was employed alongside others. And none of plaintiff's verbal or written reprimands refer to the added importance of her promptness owing to her position as the only warehouse attendant. Perhaps more importantly, the record contradicts defendant's second reason for distinguishing plaintiff from Henson. Although defendant asserts that Henson's infractions were more isolated and scattered than plaintiff's, Henson's employee counseling forms belie this assertion and reveal that Henson committed his infractions on August 29, August 30, September 1, and September 10, all within a week and a half of each other. Accordingly, a reasonable jury could find that defendant's proffered reason for terminating plaintiff while simply warning or suspending Henson is pretext for unlawful discrimination.

**V.**

Plaintiff's retaliation claim also survives defendant's summary judgment motion because the factual record reveals a genuine dispute of material fact as to whether plaintiff was terminated in retaliation for her protected activity.[6]

Title VII proscribes discrimination against an employee because, in relevant part, she "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a). In other words, an employer violates Title VII by subjecting an employee to an adverse employment action in retaliation for the employee's engagement in protected activity.

---

[6] It is of course possible that defendant may have terminated plaintiff both because plaintiff was a woman and because she was engaged in protected activity. Thus, the fact that plaintiff has adduced evidence to survive summary judgment on her discrimination claim does not foreclose a finding that her retaliation claim also survives.

14

Thus, to establish a claim for retaliation under Title VII, a plaintiff must first make out a prima facie case by demonstrating "(1) that she engaged in a protected activity," "(2) that her employer took an adverse employment action against her," and "(3) that there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d at 281 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). As with plaintiff's discriminatory discipline claim, once the plaintiff makes a prima facie case of retaliation, the burden shifts to the employer to demonstrate legitimate, non-retaliatory reasons for the adverse action. If the employer successfully does so, the plaintiff, to prevail ultimately, must show that legitimate non-retaliatory reason is pretextual. And to survive summary judgment, the plaintiff must show there is a genuine dispute of material fact as to whether the non-retaliatory reason was pretextual.

Defendant argues that it is entitled to judgment as a matter of law because plaintiff did not engage in protected activity and because there is no evidence suggesting a causal link between any protected activity and plaintiff's termination. Defendant further argues that even assuming plaintiff can establish a prima facie case of retaliation, plaintiff has not adduced evidence from which a reasonable jury could find that defendant's legitimate non-retaliatory reason for terminating plaintiff was pretextual. Defendant's argument fails in each of these respects.

To begin with, there is a genuine dispute of material fact as to whether plaintiff engaged in protected activity. With respect to protected oppositional activity under Title VII, the Fourth Circuit has made clear that an employee is protected when she opposes "not only employment actions actually unlawful under Title VII but also employment actions she reasonably believes to be unlawful." *Boyer-Liberto*, 786 F.3d at 282 (quoting *Navy Fed.*, 424 F.3d at 406). Thus, even where, as here, the record does not support the existence of a cognizable hostile work

environment claim, a plaintiff can still make out a prima facie retaliation claim if there is evidence from which a jury could find that plaintiff reasonably believed she was opposing an unlawful hostile work environment.  Such evidence exists here.  Specifically, the last incident that plaintiff reported on September 28, 2016, involved what plaintiff perceived as a physical assault and threatening attack.  And, as the *en banc* Fourth Circuit has recently made clear, an employee "ha[s] a reasonable belief that a hostile work environment is occurring based on an isolated incident if that harassment is physically threatening or humiliating." *Id.* at 284. Accordingly, plaintiff's complaint concerning the September 28, 2016 is sufficient alone to demonstrate that plaintiff engaged in protected activity.

Moreover, the close temporal proximity between plaintiff's protected activity and her termination creates a genuine dispute as to whether a causal link exists between plaintiff's protected activity and her termination.   In this respect, the Supreme Court has noted that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases).  Applying this principle, the Fourth Circuit has held (i) that temporal proximity "tends to show causation" where a plaintiff complained about perceived retaliation "just a month before she was terminated[,]"[7] and (ii) that a "temporal proximity [of three weeks] weighs heavily in favor of finding a genuine dispute as to causation."[8]

The undisputed factual record reflects that plaintiff's protected activity falls well within the time periods that the Fourth Circuit has found adequate to support an inference of causation.

---

[7] *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015).

[8] *Jacobs v. N.C. Admin. Off. Cts.*, 780 F.3d 562, 575 (4th Cir. 2015).

Specifically, plaintiff reported what she perceived as harassing behavior several times in the month and a half prior to her termination.  Plaintiff reported the use of profanity in the warehouse on August 1, 2016, she reported Allanson's use of the term "Sweetheart" and physical intimidation on August 9, 2016, and she reported the incident when Ferguson grabbed the lamp from her hand on September 28, 2016.  This last report, on September 28, 2016, was a mere eight days before plaintiff was ultimately terminated on October 6, 2016.  Accordingly, consistent with Fourth Circuit precedent, it is clear that plaintiff has adduced evidence supporting the third element of her prima facie case.

Because plaintiff has adduced evidence sufficient to establish a prima facie case of retaliation, the burden shifts to defendant to produce a legitimate non-retaliatory reason for its termination decision.  Defendant here points to the termination form and the verbal and written warnings issued to plaintiff, arguing that plaintiff was terminated, not in retaliation for her protected activity, but because of her tardiness and excessive absences.  Because the Fourth Circuit has recognized that excessive absences are a legitimate reason for termination, defendant has successfully proffered a legitimate, non-retaliatory reason for plaintiff's termination. *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1230 (4th Cir. 1998) (finding defendant proffered a legitimate non-discriminatory reason when it alleged that it terminated plaintiff due to tardiness).

Given that defendant has articulated a legitimate non-retaliatory reason for plaintiff's termination, the burden shifts once again to plaintiff to adduce evidence demonstrating that the legitimate non-retaliatory reason is, in fact, pretext for retaliation.  And to survive summary judgment at this stage, plaintiff must establish that there is at least a disputed issue of fact regarding the validity of the non-retaliatory reason.

Again plaintiff's comparator—Henson—is relevant here for, as noted above, the Supreme Court has made clear that evidence that "employees involved in acts against [defendant] of comparable seriousness . . . were nevertheless retained or rehired" is "especially relevant" to a showing of pretext. *McDonnell Douglas Corp.*, 411 U.S. at 804. In this case, plaintiff adduces evidence that Henson, who did not complain about harassment, was subjected to less severe discipline for comparable offenses. And, as described above, defendant unsuccessfully attempts to distinguish plaintiff's discipline from that administered to Henson by referring to facts either absent from the record or expressly contradicted by the record.

And even accepting defendant's assertions with respect to plaintiff's comparator as true, there is other evidence in the record which suggests the legitimate non-retaliatory reason is pretext for retaliation. For example, the final incident that prompted plaintiff's termination was the fact that plaintiff allegedly left work early on October 5, 2016. Yet, there appears to be a genuine dispute in the factual record as to whether plaintiff left early. Plaintiff cites to an email chain with a time stamp suggesting that she left work just after 3 p.m. while defendant cites to what appears to be the same email chain but with a time stamp suggesting plaintiff left work at approximately 2 p.m. It is unclear from the record which email chain is authentic, and as such, it is unclear at what time plaintiff left work. If a reasonable jury finds that plaintiff left at the end of her shift, that jury could find that defendant fabricated this basis for plaintiff's termination and that defendant's legitimate non-retaliatory reason for plaintiff's termination is not credible.

## VI.

Defendant is entitled to judgment as a matter of law with respect to plaintiff's Virginia law claim for negligent retention of an employee. Under Virginia law, the tort of negligent retention "'is based on the principle that an employer is subject to liability for harm resulting

18

from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm' others." *Ingleson v. Burlington Med. Supplies, Inc.,* 141 F. Supp. 3d 579, 585 (E.D. Va. 2015) (quoting *Se. Apartment Mgmt., Inc. v. Jackson*, 513 S.E.2d 395 (Va. 1999)) (emphasis added).  To establish a claim for negligent retention, a plaintiff must show that "she suffered an adequate level of 'harm' as a result of [the dangerous employee's] actions" and that the dangerous employee's conduct was the "type of conduct . . . necessary to place a defendant on notice that it employs a 'dangerous employee . . . likely to harm.'" *Id.* at 585-86.  Plaintiff has failed to adduce evidence with respect to either of these elements.

To begin with, plaintiff has failed to adduce evidence that she suffered an adequate level of harm as a result of Ferguson's actions.  The Fourth Circuit has noted that "Virginia law . . . generally recognizes that a plaintiff may not recover for emotional injury resulting from the defendant's negligence without proof of contemporaneous physical injury." *Elrod v. Busch Entm't Corp.*, 479 F. App'x 550, 551 (4th Cir. 2012) (citing *Myseros v. Sissler*, 239 Va. 8 (Va. 1990); *Hughes v. Moore*, 214 Va. 27 (Va. 1973); *Bowles v. May*, 159 Va. 419 (Va. 1932)).  And courts have recognized that this requirement extends to claims of negligent hiring and retention under Virginia law.[9]

Plaintiff here has adduced no evidence suggesting that she suffered contemporaneous physical injury as a result of her co-workers' conduct.  The only physical incident that occurred was when Ferguson grabbed the lamp from plaintiff's hand.  Yet, when asked to testify as to the physical harm that Ferguson caused plaintiff, she explained only that the incident caused her to

---

[9] *See, e.g.*, *Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 320 (4th Cir. 2009) ("The Virginia Supreme Court cases upholding a cause of action for negligent hiring involved physical injuries."); *Ingleson*, 141 F. Supp. 3d at 585 (noting that under Virginia law "a plaintiff alleging negligent retention must allege serious and significant physical harm"; *Ali v. Coleman*, 2013 WL 4040444, at *3 (E.D. Va. Aug. 6, 2013) (finding that "physical injury is a necessary element of negligent retention" under Virginia law).

suffer "anxiety and fear" about "working in the warehouse alone," and anxiety about potential harassment. Pl. Dep. 140:3- 22, 141:1-18, 237:15-22, 238:1-17.   And to the extent plaintiff experienced any physical pain it was as a result of her fall from the ladder, not any harassing incident.  *See id.* at 26:22-28:14.  Thus, plaintiff has not adduced any evidence showing that she suffered a physical injury as a result of the harassment she allegedly underwent, and as such, plaintiff's negligent retention claim cannot survive.

## VII.

Although plaintiff's claims for discrimination and retaliation survive summary judgment, plaintiff's claim for punitive damages does not.  Prevailing plaintiffs under Title VII can recover punitive damages upon a demonstration that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [his or her] federally protected rights."  42 U.S.C. § 1981(a)(b)(1).  The Supreme Court has made clear that to act with malice or with reckless indifference, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law …."  *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 539-40 (1999).  Moreover, "if it cannot be said that a principal of the employer actually engaged in the discriminatory conduct at issue, the plaintiff must offer evidence sufficient to impute liability for punitive damages from the individual who did so engage to the employer."  *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 442 (4th Cir. 2000) (citing *Kolstad*, 527 U.S. at 539-40).  In this regard, the Fourth Circuit has made clear that an employer can be held liable for the intentionally discriminatory conduct of its employee, "where the employee served the employer in a managerial capacity, committed the intentional discrimination at issue while acting in the scope of employment, and the employer did not engage in good-faith efforts to comply with Title VII."  *Id.* at 442.

Here, plaintiff simply alleges that defendant's failure to "take appropriate remedial action" in response to her alleged harassment exhibit "malice or reckless indifference to plaintiff's federally protected rights."  Plaintiff does not, and cannot point to any evidence in the record that supports her assertion that Charpentier acted with reckless indifference when he terminated plaintiff.  And, even accepting plaintiff's allegation that Charpentier acted with reckless indifference or malice, there is no evidence from which to impute liability to defendant. The only evidence in the record as to Charpentier's role is that he is plaintiff's supervisor, which does not alone support a conclusion that Charpentier acted in a managerial capacity. Additionally,  the record reflects that defendant attempted to take steps to address the complaints that plaintiff brought against her co-workers by investigating the incidents and reprimanding the offenders, suggesting good-faith attempts to comply with Title VII.  Accordingly, a punitive damages instruction is inappropriate in this case.

An appropriate Order will issue.


Alexandria, Virginia
July 20, 2018

/s/

T. S. Ellis, III
United States District Judge